IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDELL STACY ELAM,<br><br>    Plaintiff,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., and OPEIU LOCAL 29,<br><br>    Defendants.<br>_____ / | No. C-05-4179 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; VACATING HEARING**<br><br>(Docket Nos. 10, 13) |

   Before the Court are two motions to dismiss, the first filed November 22, 2005 by defendant OPEIU Local 29 ("Local 29") and joined by defendant Kaiser Foundation Health Plan, Inc. ("Kaiser"), and the second filed December 2, 2005 by Kaiser.  Plaintiff Wendell Stacy Elam ("Elam"), appearing pro se, has filed a consolidated opposition to the two motions, to which defendants have filed a joint reply.  Having considered the papers filed in support of and in opposition to the motions, the Court finds the matters appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the January 6, 2006 hearing.  For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

   The following background statement is taken from the allegations of the Amended

Complaint, and the contents of the documents to which the complaint refers.[1]

Elam is a former employee of Kaiser and a former member of Local 29. (See Amended Complaint ("Compl.") at 1.) He worked as a Medical Claims Examiner in Kaiser's Northern California Claims Administration office in Oakland, California. (See id.) The instant action arises from Elam's termination and a subsequent National Labor Relations Board ("NLRB") arbitration award upholding his termination.

In March 2003, Sheila Wilks ("Wilks"), a union steward, advised Elam that a "disciplinary meeting" would be held with respect to allegations by Jenny Lam, a co-worker of Elam, that Elam had sexually harassed her. (See id.) According to Elam, Wilks told him not to say anything in his own defense. (See id. at 1-2.) Elam contends that Lam's complaint arose because he had requested a co-worker to ask Lam if she would like to listen to a CD by plaintiff's jazz trio. (See id. at 2.) Elam found Wilks' conduct during the disciplinary meeting to be "hostile and accusatory." (See id. at 2.) During the course of the disciplinary meeting, Human Resources Consultant Sheryl Joe ("Joe") stated she was uncertain whether Elam's conduct constituted sexual harassment or harassment of another sort. (See id.) Elam "suspected bad faith and malicious intent giving rise to a hostile environment and defamation" by Wilks in connection with the above-referenced disciplinary meeting as well as "other earlier unrelated incidences" involving Wilks and Elam, and filed charge #32-CB-5619 with the NLRB in May 2003. (See id.) In said charge, Elam alleged: "Within the past 6 months, [Local 29] has failed in its duty to fairly represent Wendell Elam by requesting that the Employer discipline him for various reasons." (See Gamble Decl. Ex. A.) Said charge was denied by the NLRB on July 31, 2003. (See id. Ex. B.)

On June 5, 2003, Elam contacted Lam by telephone to ask about Wilks' role in connection with the March 2003 disciplinary meeting. (See Compl. at 2.) Lam told him she did not want to know anything about what he was doing, and hung up the telephone. (See id. at 3.) Elam observed Lam immediately get up and tell Wilks about Elam's inquiry. (See

---

[1] The allegations of the complaint are presumed true for purposes of the instant motion only.

2

id.) On June 10, 2003, Elam gave a sworn affidavit to the NLRB, and, the following day, "served the DFR[2] upon . . . Wilks via certified mail." (See id.) On June 15, 2003, Elam called alternate union steward Yvonne Whitehead ("Whitehead") to inquire if a resolution could be reached with respect to "the two complaints." (See id.)

On June 16, 2003, Elam was called to a disciplinary meeting by Oliver Hopkins ("Hopkins"), a department manager. (See id. at 4.) Also in attendance was Geoffrey Gamble ("Gamble"), Local 29 Vice President and Business Representative. (See id.) While waiting for the meeting to begin, Hopkins told Elam he was being suspended for having called Lam. (See id.) Elam asked Hopkins if he knew what his call to Lam was about, and Hopkins said Lam had stated that Elam had asked her about the March disciplinary meeting. (See id.) After this conversation between Elam and Hopkins, Joe arrived to conduct the disciplinary meeting. (See id.) Elam told Joe that he had called Lam in connection with the "active investigation of the DFR charge filed with the NLRB in May, 2003," and did not sexually harass her. (See id.) Joe told Elam she was aware of the DFR charge. (See id. at 4-5.) Joe thereafter required Elam to sign a "Step Level 3 Correction Action" and suspended him for three days, specifically, June 17, 18, and 19, as a result of the sexual harassment charge against him. (See id. at 5.) Before leaving the meeting, Joe told Elam to report for another disciplinary meeting at 7:30 a.m. on June 20, 2003, at which meeting the service of his charge against Wilks would be addressed. (See id.)

At the June 20, 2003 disciplinary meeting, attended by Gamble, Wilks, Joe, Hopkins and Elam, Local 29, according to Elam, "brought cause and directed the employer to discipline [Elam] for (having exercised free speech)[,] the message to Steward Whitehead on June 15, 2003, and for service of the DFR charge upon the steward." (See id.) Elam was told that his service of the DFR on Wilks and his telephone call to Whitehead were in violation of company policies. (See id.) Elam again argued that the conduct for which he was being disciplined was union activity in connection with charge #CB-5619. (See id.)

---

[2] The Court assumes Elam is referring to the charge for breach of the duty of fair representation ("DFR") that he filed in May 2003.

3

1  Nonetheless, Elam was required to sign "a Step 4 Last Chance Agreement and take a 'Day
2  of Decision' suspension under duress and threat of immediate dismissal." (See id.)
3     Elam, Local 29, and Kaiser management were given an opportunity to agree upon
4  the language of the Last Chance Agreement and to make any agreed upon corrections.
5  (See id.) When Elam produced a copy of the instructions he received from the NLRB on
6  how to properly serve a complaint, Gamble told management to delete from the Last
7  Chance Agreement the reference to Elam's service of the charge on Wilks, but stated that
8  the reference to Elam's call to Whitehead could remain. (See id. at 6-7.) According to
9  Elam, the Last Chance Agreement, "in addition to reprimanding [him] for union activity
10 associated with the DFR, required close monitoring of [him] for behavior and forbade
11 contact with co-worker Lam for any reason whether work related or not – all for a one year
12 period." (See id. at 8.)
13    The Last Chance Agreement states that Lam described Elam's June 5, 2003
14 telephone call as an inquiry as to whether she would be working overtime on June 7, 2003,
15 and that Lam felt uncomfortable and wished to be left alone. (See Gamble Decl. Ex. C at
16 1.) The Last Chance Agreement also quotes Elam's June 14, 2003 voicemail message to
17 Whitehead, although it does not characterize that contact in any way. (See id. at 2.)
18 Pursuant to the Last Chance Agreement, which states that it was to be in effect for one
19 year, Elam was required to "adhere to all applicable Kaiser Permanente policies," and
20 ordered not to "harass or retaliate against any Kaiser Permanente employees, co-workers,
21 managers or supervisors" and to "refrain from approaching, telephoning, contacting or in
22 any way communicating with [Lam] for any reason or purpose, work or non-work related."
23 (See id. at 3.) The Last Chance Agreement further provided that Hopkins and Linda
24 Fearon, Elam's supervisor, would meet with him "on a regular basis to closely monitor [his]
25 performance and behavior," and that if Elam failed to comply with the requirements of the
26 Last Chance Agreement, he would "be subject to further disciplinary action, up to and
27 including termination." (See id. at 3-4.)
28    In July 2003, Elam and Local 29 filed a grievance with respect to the imposition of

4

the Last Chance Agreement and the "back-to-back suspensions," arguing that such acts constituted "unjust discipline." (<u>See</u> Compl. at 8; <u>see also</u> Gamble Decl. Ex. D.) In October 2003, the first meeting was held with respect to the above-referenced grievance, at which meeting plaintiff challenged the lawfulness of the Last Chance Agreement. (<u>See</u> Compl. at 9.) After the meeting, Elam states, he "was under the impression that the Last Chance Agreement had been altered and made to expire in January 2004, instead of June 2004, by mutual agreement," although he concedes that no such agreement was made in writing. (<u>See</u> <u>id</u>.) On two separate occasions thereafter, Elam asked Wilks to confirm that it had been mutually agreed that the terms of the Last Chance Agreement would expire in January 2004, and Wilks told him that was her understanding as well. (<u>See</u> <u>id</u>.)

In February 2004, Elam was terminated after he contacted Lam by email following the funeral for another co-worker, which services Lam had attended. (<u>See</u> <u>id</u>. at 10.) Elam's email to Lam stated, in its entirety: "Just wanted to say hi – hope you are do[i]ng well – wen." (<u>See</u> <u>id</u>.) Elam was terminated two weeks after transmission of the email, despite Elam's argument that the Last Chance Agreement had expired in January. (<u>See</u> <u>id</u>.)

Local 29 and Elam filed a grievance on February 24, 2004, challenging his termination. (<u>See</u> Gamble Decl. Ex. E.) Arbitration began on March 15, 2005.[3] (<u>See</u> Compl. at 11.) On April 15, 2005, Elam received a copy of an arbitration award upholding his termination. (<u>See</u> <u>id</u>. at 11-12.)

The arbitration award is dated April 6, 2005. (<u>See</u> Gamble Decl. Ex. G.) The arbitration award states that between December 2001 and the date of Elam's termination, Elam gave Lam a copy of an email stating he was falling in love with her, "gave her a page from a birthday book," sent her flowers, presented her with a tape of his music, and called her at work, despite having been told by Lam that she was happily married and that she wanted him to leave her alone. (<u>See</u> <u>id</u>. at 1.) The arbitrators rejected Elam's contention

---

[3] Defendants have submitted a copy of the arbitration transcript. (<u>See</u> Gamble Decl. Ex. F.)

5

1  that the Last Chance Agreement had been modified to end in January 2004, finding no
2  support in the record for such modification. (See id. at 2.) The arbitrators found the Last
3  Chance Agreement to be enforceable, and that Kaiser had just cause to terminate Elam in
4  February 2004 when he violated the Last Chance Agreement by contacting Lam. (See id.)
5        On October 14, 2005, Elam filed the instant action. On October 26, 2005, he filed
6  an Amended Complaint. Elam contends that Kaiser and Local 29 are liable for breaching
7  the collective bargaining agreement, "NLRA/LMRDA [v]iolations," "[f]ailure of the Union in
8  its Duty of Fair Representation which had serious adverse effect throughout the
9  grievance/arbitration procedure above and beyond mere negligence[,] and LMRDA Title 1
10 Union Member Bill of Rights Violations." (See id. at 13.) Elam seeks "injunctive relief
11 pursuant to LMRDA section 102, including vacating the arbitration award of April 15, 2005,
12 as well as damages for intentional infliction of emotional distress, punitive damages, and
13 any relief as appropriate in accordance with Civil Rights Act of 1991."

## LEGAL STANDARD

15       A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears
16 beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
17 entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be
18 based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
19 under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699
20 (9th Cir. 1990).
21       Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any
22 material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co.,
23 Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part
24 of the complaint, however, may be considered. See id. Documents whose contents are
25 alleged in the complaint, and whose authenticity no party questions, but which are not
26 physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14
27 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the
28 authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

relies," regardless of whether the document is referred to in the complaint. See <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

**A. Service of Opposition**

Defendants argue that the Court should disregard Elam's opposition because he failed to submit a proof of service, and failed to timely serve copies of the opposition on defendants. Defendants correctly note that Elam violated Civil Local Rule 5-6(a) by failing to file a proof of service, and that, pursuant to Civil Local Rule 5-6(b), any document filed without a proof of service "may be disregarded by the Judge if an adverse party timely objects on the ground of lack of service." See Civil L.R. 5-6. Here, however, defendants acknowledge that they eventually obtained a copy of Elam's opposition, and do not claim that they were prejudiced in preparing their reply.

Accordingly, the Court will not disregard Elam's opposition. The Court cautions Elam, however, that, with respect to any future filings, he must timely serve all defendants with a copy of all documents he files, <u>see</u> Civil L.R. 5-5, and also must file a proof of service in compliance with Civil Local Rule 5-6.

/ /

/ /

**B. Statute of Limitations**

    **1. Hybrid § 301/Fair Representation Claim**

Local 29 and Kaiser both argue that Elam's hybrid § 301/fair representation claim asserted against them is time-barred.

Where "the union representing [an] employee in [a] grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee "may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." See DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164 (1983). "Such a suit, as a formal matter, comprises two causes of action," specifically, a suit against the employer for breach of the collective bargaining agreement, pursuant to § 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185), and a suit against the union for breach of the union's duty of fair representation, which "is implied under the scheme of the National Labor Relations Act" ("NLRA"). See id. The Supreme Court has held that the two claims "are inextricably interdependent"; to prevail against either the company or the union, the employee "must not only show that [his] discharge [or discipline] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." See id. at 165 (internal quotations and citations omitted). Such a "hybrid § 301/fair representation claim," see id., is governed by a six-month statute of limitations borrowed from § 10(b) of the NLRA (29 U.S.C. § 160). See DelCostello, 462 U.S. at 170, 172.

As noted, the instant action was filed October 14, 2005. Defendants contend Elam's complaint is time-barred because all of the conduct giving rise to Elam's complaint occurred more than six months before the filing thereof. Elam alleges, however, that he did not receive the arbitration award until April 15, 2005. (See Compl. at 13.) The Ninth Circuit has held that "where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award." See

Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986). Additionally, where a fair representation claim is based on conduct by the union occurring before the arbitration, the statute of limitations is tolled during the pendency of grievance and arbitration proceedings thereon and does not begin to run until the plaintiff learns of the outcome of those proceedings. See id. at 1510. Because the instant action was filed within six months of the date Elam attests he learned of the arbitrator's decision, his hybrid § 301/duty of fair representation claim is timely.

Accordingly, defendants' motion to dismiss Elam's hybrid § 301/duty of fair representation claim as time-barred will be denied.

**2. Claim to Vacate Arbitration Award Based on Conduct of Arbitrators**

Defendants argue that Elam's claim to vacate the arbitration award, to the extent such claim is based on wrongdoing by the arbitrators, is time-barred. Elam alleges that "[t]he written arbitral award and tribunal manifest undue prejudice short of due process/procedure, without the appearance or sworn testimony of Plaintiff's accusers (Due Process), and take no issue of the Plaintiff's statutory rights from Plaintiff testimony regarding the DFR charge served upon Steward Wilks and the proximity of the LCA imposed on the Plaintiff by the employer and the union" and that "[t]he Factual Findings of the written arbitration award were seriously flawed." (See Compl. at 11.) Such claim is based on acts of the arbitrators, rather than acts of Kaiser and Local 29.

In DelCostello, the Supreme Court recognized that a union employee who is dissatisfied with the result of a union arbitration may seek "very limited review" of the arbitration award. See DelCostello, 462 U.S. at 163; see also Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 61 (2000) (noting that while "an arbitrator's award must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice, . . . as long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision") (internal quotations and citations omitted).

The Ninth Circuit has held that, in California, a petition to vacate a labor arbitration award is governed by the 100-day statute of limitations set forth in § 1288 of the California Code of Civil Procedure. See San Diego County District Council of Carpenters v. Cory, 685 F.2d 1137, 1138 (9th Cir. 1982); see also Cal. Code Civ. Proc. § 1288 ("A petition to vacate an award . . . shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner.")

As Elam filed the instant action more than 100 days after he alleges he received the arbitration award, the Court agrees with defendants that his claim to vacate the arbitration award, to the extent such claim is based on wrongdoing by the arbitrators, is time-barred.[4]

### 3. LMRDA Claim and Claim for Violation of § 8 of the NLRA

Although Elam in his opposition argues that two of his claims, specifically, Elam's claim that his rights under the Labor Management Reporting and Disclosure Act ("LMRDA") were infringed and that he was unlawfully disciplined in violation of § 8 of the NLRA, (see Compl. at 5-6, 13), are not time-barred, defendants have not challenged those claims in their motions to dismiss.[5]  Accordingly, the Court does not decide at this time whether said claims are time-barred or whether Elam has stated a claim for violation of said statutes.

### C. Merits: Hybrid § 301/Fair Representation Claim

Both defendants move to dismiss Elam's hybrid § 301/fair representation claim on the ground he has not adequately alleged either a breach of the duty of fair representation by Local 29 or that Kaiser breached the collective bargaining agreement. As noted, in order to prevail on a hybrid § 301/fair representation claim, a plaintiff "must not only show that [his] discharge was contrary to the contract but must also carry the burden of

---

[4] In light of this ruling, the Court does not reach defendants' additional argument that they are not proper defendants to Elam's claim to vacate the arbitration award to the extent such claim is based on acts of the arbitrators.

[5] The Court does not reach defendants' arguments, set forth for the first time in their reply, that the LMRDA claim is subject to dismissal on its merits, as Elam has had no opportunity to respond. See, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n. 6 (9th Cir. 2004) (refusing to consider argument raised for the first time in reply because opposing party had no opportunity to respond).

demonstrating a breach of duty by the Union." See DelCostello, 462 U.S. at 165.

### 1. Fair Representation

The Supreme Court has held that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." See Vaca v. Sipes, 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotation and citation omitted). A union's actions are discriminatory where a union member "suffers invidious, hostile treatment" that is "intentional, severe, and unrelated to legitimate union objectives." See Amalgamated Ass'n of Street-Electric Railway and Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 301 (1971); see also Vaca, 386 U.S. at 177 (noting union must "serve the interests of all members without hostility or discrimination toward any"). To show bad faith, there "must be substantial evidence of fraud, deceitful action or dishonest conduct." See Lockridge, 403 U.S. at 299.

Defendants argue that Local 29's conduct at the arbitration was neither arbitrary nor in bad faith. In particular, defendants move to dismiss the § 301 claim to the extent such claim is based on Local 29's failure to introduce, at the arbitration, Elam's June 10, 2003 affidavit filed with the NLRB and a June 10, 2004 ruling from a California EDD Administrative Law Judge concerning workers' compensation benefits. Elam, in his opposition, does not contend that his claim against defendants is based on a failure to submit said documents to the arbitrators. Moreover, Elam cannot have been unfairly prejudiced by reason of any failure on the part of Local 29 to submit said documents to the arbitrators, because Elam, who testified at the arbitration, could have testified to any of the facts set forth in his prior affidavit and because workers' compensation rulings, by statute, are not admissible in any subsequent proceeding. See Cal. Unemp. Ins. Code § 1960. Accordingly, Elam cannot base his § 301 claim on Local 29's asserted failure to submit

such documents to the arbitrators, and to the extent his claim is based thereon, such claim is subject to dismissal.

Defendants fail, however, to address whether the disciplinary conduct was discriminatory. The basis of Elam's fair representation claim is not clearly set forth in the complaint. In his opposition, however, Elam clarifies that his claim is predicated on a theory that defendants discriminated and retaliated against him for filing a DFR charge. (See Opp. at 2; see also Compl. at 4, 6, 12.) The Ninth Circuit has suggested that a fair representation claim may be stated where a union "seek[s] to punish" a union member for filing a lawsuit. See Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 618-19 (9th Cir. 2003) (declining to restrict "discrimination" to such classifications as race; noting union may not "discriminate on the basis of union membership"). As Elam's theory of liability under § 301 is not clearly set forth in the complaint, however, the Court will grant defendants' motion to dismiss Elam's hybrid § 301/fair representation claim, with leave to amend.

### 2. Breach of Collective Bargaining Agreement

Kaiser argues that Elam has not stated a claim against Kaiser for breach of the collective bargaining agreement ("CBA") because the CBA gives Kaiser "sole authority and responsibility" to "discipline and discharge employees for just cause." (See Gamble Decl. Ex. K (CBA) Articles IV and XXVII.) In support thereof, Kaiser asserts that Elam concedes his employment was terminated for sexual harassment and that he repeatedly contacted Lam after having been told not to do so by both Lam and Kaiser.

Contrary to Kaiser's characterization of Elam's position, Elam expressly alleges he was terminated "under the unsubstantiated pretext of sexual harassment." (See Compl. at 12.) The Court agrees, however, that Elam has not alleged what terms of the CBA were breached by his termination.

Accordingly, the Court will grant defendants' motion to dismiss Elam's hybrid § 301/fair representation claim, with leave to amend.

/ /

**D.  Preemption of State Law Claims**

Defendants argue that all of Elam's state law claims are preempted by § 301 of the LMRA.  It is not clear that Elam intends to assert any state law claims; he does not mention any such claims in his opposition.  The Court sees no reason to expend judicial resources determining whether any state law claims are preempted unless and until Elam clearly sets forth such claims in his complaint.

Accordingly, if Elam intends to assert violations of state law, he must clearly set forth such claims in his amended complaint.

## CONCLUSION

For the reasons set forth above, the motions to dismiss are GRANTED in part and DENIED in part, as follows:

1. Defendants' motion to dismiss as time-barred Elam's claim to vacate the arbitration award, to the extent such claim is based on wrongdoing of the arbitrators, is GRANTED, and said claim is DISMISSED with prejudice.

2. Defendants' motion to dismiss Elam's hybrid § 301/fair representation claim is GRANTED, and said claim is DISMISSED with leave to amend.

3. In all other respects, the motion is DENIED.

4. Elam shall file an amended complaint within twenty days of the date of this order. If Elam intends to assert any state law claims against defendants, such claims shall be clearly set forth in the amended complaint.

This order terminates Docket Nos. 10 and 13.

**IT IS SO ORDERED.**

Dated: December 30, 2005

MAXINE M. CHESNEY
United States District Judge